AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

3/26/21

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black ZTE phone, serial number: 320297305211 in Possession of the DEA in Beavercreek, Ohio

Case No. 3:21MJ121

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 846 | conspiracy to distribute/possess with intent to distribute controlled substances |
| 18 USC s. 922(g)(1) | felon in possession of a firearm |

The application is based on these facts:

See Attached Affidavit of Jason Barnes

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JASON BARNES (Affiliate) *Digitally signed by JASON BARNES (Affiliate) Date: 2021.03.26 09:54:22 -04'00'*

*Applicant's signature*

Jason Barnes, TFO of the DEA
*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: 3/26/21

City and state: Dayton, Ohio

*signature*
, US Magistrate Judge
*me and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jason M. Barnes, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") within the meaning of Title 21, United Stated Code ("U.S.C."), Section 878, that is, and officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses as detailed in 21 U.S.C. § 878.

2. I have been a TFO with DEA since January 2019. I have been employed in law enforcement since December 2001. I currently serve as an officer with the Dayton Police Department ("DPD"). I have been assigned to Patrol Operations and am currently assigned to the Narcotics Bureau. I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs and gun related offenses. I have conducted narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and weapons, participated in undercover narcotic purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities and the locations at which they reside, operate, or store drugs and drug proceeds.

3. It has been my experience while conducting other drug investigations that operating drug houses and/or apartments continue to diversify and it is not uncommon to recover different types of illegal drugs from inside the residence. It is also not uncommon to encounter individuals in possession of illegal drugs after leaving from operating drug houses/apartments. In addition, it has been my experience that firearms are commonly kept and located inside operating drug houses and/or apartments.

4. The facts in this affidavit come from my personal observations, my training and experience, the review of certain records, as well as information obtained from other detectives and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## INDENTICATION OF THE DEVICE TO BE EXAMINED

5. Along with other agents and officers, I am currently involved in an investigation of violations for 18 U.S.C. § 922(g) (Possession of a Firearm by a Felon); 21 U.S.C. §§ 846 (conspiracy) and 841(a)(1) (Possession to Distribute a controlled substance); 21 U.S.C.

§ 843 (Use of a Communication Facility) committed by Brandon Rainey. This Affidavit is submitted in support of an Application for a search warrant for the following:

a. A black ZTE phone, serial number: 320297305211 (hereinafter referred to as "**SUBJECT DEVICE**")

6. **SUBJECT DEVICE** is currently in the custody and control of the DEA Dayton Resident Office (DRO), 3821 Colonel Glenn Highway, Beavercreek, Ohio. In my training and experience, I know that the **SUBJECT DEVICE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT DEVICE** first came into the possession of the DEA DRO. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. The DEA is conducting a criminal investigation of, among others, Brandon RAINEY, aka B Rainey (hereinafter referred to as "RAINEY") concerning potential violations of federal drug trafficking laws. Specifically, through controlled buys, information from confidential sources, and search warrants, law enforcement has learned that RAINEY and others are part of a Drug Trafficking Organization (DTO) selling crystal methamphetamine, fentanyl and cocaine in the greater-Dayton area.

8. During late 2020 and early 2021, investigators reviewed RAINEY'S criminal history and learned that he is currently on post-release control with the Ohio Adult Parole Authority (APA) stemming from a 2016 conviction for aggravated burglary. RAINEY has additional prior conviction in the state of Ohio for aggravated robbery (2000) and aggravated burglary (2010).

9. On January 7, 2021, Affiant obtained federal search warrants from the Honorable Sharon L. Ovington for multiple locations associated with the RAINEY DTO, including: 615 Forest Avenue, Dayton Ohio.

10. On January 12, 2021, DEA executed these federal search warrants, including at 615 Forest Avenue. Before doing so, law enforcement performed surveillance at the residence and watched RAINEY exit the rear of 615 Forest Avenue. He entered a 2013 white Chrysler 300, Ohio license plate M049569, (hereinafter Chrysler) and left the area. RAINEY returned in the Chrysler, parked, and entered the rear door of 615 Forest Avenue. Shortly thereafter, he, along with Octavia ALLEN, again exited the rear of 615 Forest Avenue, entered the Chrysler and drove to the APA's offices in Montgomery County, Ohio. ALLEN parked the Chrysler in the APA parking lot while RAINEY went inside of the facility. While RAINEY was inside, APA arrested him. Soon after, a marked police unit contacted ALLEN in the parking lot. After removing ALLEN from the Chrysler and finding a phone on her person, officers ran a trained, certified drug dog around the vehicle,

and the canine alerted to the presence of narcotics. Upon conducting a probable cause search of the car, officers found the **SUBJECT DEVICE** in the Chrysler's center cup holder. The **SUBJECT DEVICE** was seized from the Chrysler and transported to the DEA DRO, where it was secured as evidence.

11. Meanwhile, on January 12, 2021, the DEA and other law enforcement executed the search warrant at 615 Forest Avenue – the residence from which RAINEY had departed. During the search of the residence, agents located: bulk United States Currency (an indicator of drug trafficking); approximately 125 grams of suspected crystal methamphetamine; approximately 1.4 pounds of suspected cocaine; approximately 2.8 pounds of suspected fentanyl; approximately 1 pound of suspected marihuana; 1 Draco rifle; 1 FN 57 handgun and 2 additional handguns. Based on my training and experience, I believe that RAINEY was using this location to store and sell controlled substances.

12. Following RAINEY's arrest on January 12, 2021, Affiant reviewed jail calls that RAINEY made while in custody at the Montgomery County Jail. For instance, Affiant monitored jail call P18_5243_115_20210114092746 between RAINEY, ALLEN and a third-party TRACY GIBSON. During the call, RAINEY asked what ALLEN had done with the other phone. ALLEN responded that they (i.e., the police) had taken her phone as well whatever phones were in the car. RAINEY stated that there was a reason that he was asking her about the phone in the car and sought clarification whether they (i.e., the police) had taken that phone or not. ALLEN responded that they (i.e., the police) took the phone in the car. Based on my training and experience as well as familiarity with the facts of this case, I believe that, during this call, RAINEY was expressing concern that investigators had recovered a phone – the **SUBJECT DEVICE** – from the Chrysler. RAINEY's fixation with the **SUBJECT DEVICE** suggests that there is evidence of drug trafficking activity – pictures, cell phone numbers, contact information, or text messages – on that cellular telephone.

13. I know from my training and experience investigating drug trafficking, along with purchasing drugs in an undercover capacity, that cell phones are commonly used by drug traffickers to facilitate selling drugs. It is common for drug traffickers to have numerous cell phones in their possession which often contain phone numbers of the drug buyers. The cell phones often contain phone call history with drug buyers, text message conversations setting up drug transactions, photographs of illegal narcotics and/or firearms, and other miscellaneous items relating to drug trafficking.

14. Additionally, based on my training and experience, individuals who commit drug and gun violations commonly take photographs of themselves and others with drugs and firearms. The **SUBJECT DEVICE** recovered in this matter is capable of taking and storing photographs.

## **TECHNICAL TERMS**

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a

4

mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections

5

16. between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16. Based on my training, experience, and research, I know that **SUBJECT DEVICE**, has capabilities that allow it to serve as a wireless telephone and digital camera, along with further capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

6

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

JASON BARNES (Affiliate)
Digitally signed by JASON BARNES (Affiliate)
Date: 2021.03.26 09:56:06 -04'00'

Jason Barnes
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on March 26th, 2021:

Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is the following:

1) A black ZTE phone, serial number: 320297305211 (hereinafter referred to as "**SUBJECT DEVICE**

**SUBJECT DEVICE** is currently located at the DEA Dayton Resident Office, 3821 Colonel Glenn Highway, Beavercreek, Ohio 45324.

This warrant authorizes the forensic examination of **SUBJECT DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of 18 U.S.C. § 922(g) (Possession of a Firearm by a Felon); 21 U.S.C. §§ 846 (Conspiracy) and 841(a)(1) (Possession to Distribute a controlled substance); 21 U.S.C. § 843 (Use of a Communication Facility) and involve Brandon RAINEY. since September 9, 2020 including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the **SUBJECT DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.